Common Pleas Court of Clark County.

RALPH GERBER V. AMERICAN SEEDING MACHINE CO.

Decided April 17, 1930.

*Martin & Corry,* for plaintiff.

*Keifer & Keifer, Chase Stewart,* and *George S. Raup,* for cross-petitioners.

*Cole, Bowman & Hodge,* and *Frank W. Geiger,* for defendant.

DAVIS, J.

This matter is before the court upon a demurrer of plaintiffs to the answer of the defendant company. The splendid oral arguments and briefs of different counsel indicate they are thoroughly familiar with the facts of the case, so that a very concise statement of them will be sufficient for this decision.

The plaintiffs are holders of preferred stock of the defendant company and bring this action on behalf of themselves and others similarly situated.

This stock is part of a total issue of preferred stock which was sold in pursuance of a certificate of increase of capital stock, filed by the defendant company in the office of the Secretary of State of Ohio, on April 2, 1906. This certificate contains the following provisions:

"Resolved that the capital stock of the said corporation be increased from One Thousand ($1,000) Dollars, its present capital stock, to Seven Million, Five Hundred Thousand ($7,500,000) Dollars divided into seventy-five thousand (75,000) shares of One Hundred ($100) Dollars each, and that Two Million, Five Hundred Thousand ($2,-500,000) Dollars of such increase be in preferred stock bearing six (6%) per cent. cumulative dividend per annum payable quarterly out of the surplus profits of the Company for each year, in preference to all other stockholders, and such dividends shall be cumulative, and upon any distribution of the assets of said corporation such preferred stock shall be entitled to payment of its par value and the amount of such cumulative dividends then unpaid in preference to all other stock, but to no other dividend or payment."

The stock certificates issued by the defendant company to the purchasers of this preferred stock also contain the following provision:

"The preferred stock, as more fully provided in the certificate filed with the Secretary of State, is entitled, in preference to the common stock, to cumulative dividends at the rate of six per centum yearly, and on distribution of assets, to the payment of its par value and the amount of such cumulative dividends then unpaid, but to no other dividend or payment."

In April, 1929, the defendant company, by authority of the corporate sale merger statutes of Ohio, Section 8623-65 *et seq.*, of the General Code, entered into an agreement for the conveyance and transfer of all its assets and property to the Oliver Farm Equipment Company and to receive in return and in payment therefor, stock of the Oliver Farm Equipment Company.

The defendant company proposes to make distribution of said stock of the Oliver Farm Equipment Company amongst its own preferred and common stockholders, but

does not propose to distribute to the holders of its preferred stock the par cash value of such preferred shares with unpaid cumulative dividends to May 13, 1929, which dividends amount to $14 per share.

These facts are alleged on behalf of the holders of such preferred stock, and admitted by the defendant company.

It is also admitted by the parties that the plaintiffs have not made or filed any written objections nor made nor filed any demand for the payment of the value or of the fair cash value of the shares of preferred stock, nor made any effort to have the value, or fair cash value of such stock agreed upon or determined, as provided in Section 8623-72 of such statutes.

Defendant contends that the plaintiffs are now bound by the action of the defendant company and the favorable ratifying votes of more than three-fourths of defendant's stockholders.

Plaintiffs contend they can stand upon their contract rights as expressed in the certificate of increase of capital stock of the defendant company, and in the certificates of preferred stock and are not required to follow the procedure of Section 8623-72.

It is clear that the certificate of increase of capital stock of the defendant company and the certificates of the preferred stock issued by the company in pursuance thereof, constitute a contract between the corporation and the subscribers to such stock, which was valid and authorized by the laws of the state, and that one of the terms of the contract was that, "upon any distribution of the assets of said corporation such preferred stock shall be entitled to payment of its par value and the amount of such cumulative dividends then unpaid in preference to all other stock, but no other dividend or payment."

It is also clear that the proposed distribution of the proceeds of the sale of its assets by the corporation, would not be in accordance with this provision of the contract, and the holders of the preferred stock would receive less in cash value than they would if that term of the contract be complied with.

The plaintiffs claim the protection of Article I, Section 10 of the Constitution of the United States, which provides in part, that—

"No state shall pass any law impairing the obligation of contracts."

Also, Article 14, Section 1 of the same Constitution, which provides, in part:

"Nor shall any state deprive any person of life, liberty or property without due process of law."

They also claim the protection of Article II, Section 28, of the Ohio Constitution, which provides, in part, that

"The General Assembly shall have no power to pass retroactive laws or laws impairing the obligation of contracts."

Also Article I, Section 19 of the same Constitution, providing, in part,

"Private property shall ever be held inviolate, but subservient to the public welfare."

They further claim the protection of the saving clause, being Section 8623-136, General Code, which provides:

"This act shall not effect or impair any act done, offense committed or right accruing, accrued or acquired or liability, penalty, forfeiture or punishment incurred prior to the time this Act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted as fully and to the same extent as if this act had not been passed."

The plaintiffs urge therefore, that the defendant company is attempting to violate and ignore their contractual rights and its contractual obligations in the distribution of the proceeds from the sale of the assets of the defendant corporation.

This brings us directly to a consideration of these constitutional provisions and legislative enactments with a view to determining their purpose and scope.

Do the constitutional provisions conflict? If so, which shall control?

Is Section 8623-72 of the General Code, unconstitutional? If not, does it control in this case to the exclusion of express contractual rights?

It is evident that these constitutional provisions in and of themselves, are not in conflict, and it is also quite proper to assume that they were never intended or expected to conflict. So, if a conflict arises, it must necessarily be by virtue of some statutes enacted by authority of the one but which conflicts with the other, or by virtue of a wrong construction and application of a statute which otherwise would not be in conflict with either of these constitutional provisions.

The defendant relies upon Section 2, Article XIII of the Constitution of Ohio, which provides,

"Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed."

Defendant agrees that the certificate of increase of capital stock evidenced a contract, but claims it is subject to two very important limitations:

(1) It is valid only to the extent that it is authorized by the general corporation law in force at the time of its adoption: and

(2) It is subject to the implied condition that its terms may be changed from time to time by any change in the general corporation law which the Legislature may validly enact under its constitutional reserved power of amendment and repeal."

It would be very illuminating if it were definitely determined just what are the limitations upon the reserved legislative power to alter or repeal the terms of such contracts by a change in the general incorporation law.

Counsel for defendant, in their brief, say:

"While no doubt it has its natural limitations, our Supreme Court has not, as yet, essayed to define any of them."

Also, in the case of *Allen* v. *Scott,* 104 O. S., 436, our Supreme Court says:

"These statutes and constitutional provisions have been so universally employed and so uniformly upheld as constitutional and valid, in a large number of cases upon a great variety of questions, that the general proposition is no longer disputed, and yet it must be admitted that the extent of the power is not yet fully settled and that it is constantly giving rise to litigation upon new questions, which fact is evidenced by the case at bar."

Is this legislative power to create, alter or abolish rights and obligations limited to only those which are created or imposed by such general laws themselves, or does it also include those which are acquired or assumed solely by virtue of the terms of an express and voluntary contract between the parties, and which, except for such contract, would never have existed.

An important and exhaustive citation by plaintiffs upon this case, is found in the case of *County of Santa Clara* v. *Southern Pacific Railroad Company,* 18 Fed. Rep., 385. The quotation of one sentence from the opinion in that case indicates the view of the court upon that point:

"By force of the reservation, the state may alter, amend or revoke what it grants; nothing more."

Under this theory it could be seriously questioned whether or not the contractual right which the plaintiffs seek to enforce should be considered as a grant from the state, or as the grant of a right by the corporation.

In other words, can contracts of a corporation made with third persons, after the grant of its charter by the state, be considered as a grant by the state to such third persons of their contractual rights against the corporation?

This reservation of power to alter or to repeal is further discussed by our Supreme Court in the above cited case of *Allen* v. *Scott,* in these words:

"It has been held times without number that a contractual relation exists between a corporation and its stockholders, and it was held in the celebrated case of *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. (17 U. S.), 518, decided by the Supreme Court of the United States in 1819, that a charter granted by a state,

granting corporate powers, constitutes a contract between the state and the corporation, the obligations of which cannot be impaired by an alteration, amendment or repeal of such charter without the consent of the corporation, unless the power of amendment or repeal was expressly reserved by the state. For more than one hundred years the doctrine of that case has been accepted and applied and is today firmly established as a legal principle. In the concurring opinion of Judge Story in that case there was a suggestion of a reservation of the power of alteration or repeal, and soon after the case was decided many states of the Union began to insert in their constitutions and statutes relating to the organization of corporations provisions for reserve power and control of corporations by making all charters and laws subject to alteration, amendment or repeal."

\* \* \* \* \* \* \* \*

"It was undoubtedly the purpose and the intent of state constitutions and statutes, by such reservations of power, to do away with the restraint of that section of the federal constitution above quoted, as declared in the Dartmouth case."

This is a case cited by defendant in which it was sought to hold stockholders of an Ohio banking corporation upon the double liability imposed by the constitutional amendment of September 3, 1912, although such double liability did not attach at the time such corporation was formed. The court held that the double liability attached; and also that it was not a violation of Section 10 of Article I, of the Federal Constitution providing that "No state shall pass any law impairing the obligation of contracts.

The defense urges this authority as pertinent in this case, but it must be noticed that while the alteration in the nature of the stockholders' liability originated in and was imposed by a change in the general laws, it was not contrary to any terms of the express contract between the parties themselves. And it cannot be lost sight of that the point in controversy here is the recognition and enforcement or non-recognition and non-enforcement of one of the terms of an express contract between the parties themselves.

If the plaintiff and defendant, in the case of *Allen* v. *Scott*, had come into court with an express agreement be-

tween them which modified or even avoided the effect of the double liability amendment, it would then have presented our question as to whether or not the parties were bound by the terms of their contract.

Such a situation is approached in the case of *Marfield* v. *Traction Company*, 111 O. S., 139. That was also a case in which the plaintiffs, as bond holders, sought to enforce the double liability against stockholders. But the bonds contained the following provision which was intended to nullify and avoid the effect of the constitutional provision creating double liability:

"The holder of this bond shall have no recourse for its payment to any individual liability imposed by statute or otherwise, upon any present or future stockholders or officers of said the Southern Ohio Traction Company; such liability being taken to be waived by such holder."

Our Supreme Court held that such a contract, if fairly made and supported by valid consideration, is enforceable as between the parties and not contrary to any public policy.

It may be noted that the Marfield case was decided by the same court two years after the Allen case, and the opinion in each was delivered by Chief Justice Marshall.

The defendant, in citing the case of *Spencer* v. *Beaver-Remmers-Graham Company*, contend that the facts in that case were identical with the facts in the case at bar, and the holding therein of the Common Pleas Court of Montgomery county, and being affirmed by the Court of Appeals for this District, is conclusive upon this court.

It does not seem to this court, however, that the facts in the two cases, and the questions presented, are the same. In the case at bar the plaintiffs seek to enforce the terms of an express stock subscription contract with the corporation which provides specifically what amount they shall receive for their preferred stock in the event of distribution of assets.

In the case cited, the statement of facts does not disclose any such stock subscription contract, but it appears that the plaintiffs there were the holders of preferred stock of

$100 par value and for which they demanded payment at par value before any other distribution.

There was also a question of a trust, *ex maleficio*, which does not enter into this case.

The contract upon which the plaintiffs seek to stand in the case at bar is clear, but what was the contract of the plaintiffs in the case cited? For the rights and obligations between a corporation and its stockholders, and between the stockholders themselves, are contractual.

It does not appear that any right was claimed by virtue of former Section 8671 (now repealed) of the General Code of Ohio, which provided, in substance that on insolvency or dissolution the holders of preferred stock were entitled to full payment of par value, before anything was paid to the common stock. And since it appears that the plaintiff served notice, in writing, of protest against the proposed consolidation; that he intended to stand upon his statutory rights; demanded payment of the value of the stock, and alleged in his petition that his stock was of the actual value of $100 per share it would seem that he assumed the position of a holder of preferred stock without any preference, either statutory or contractual, in the distribution of assets.

In the absence of a statutory provision or one in the stock subscription contract, providing otherwise, preferred and common stockholders stand upon the same footing and share equally in the distribution of assets after corporate obligations and other preferences are satisfied. And if there is not sufficient to pay both in full, they share equally in the loss.

Now, the purpose of the corporate sale and merger statutes is to permit a certain per cent. of the stockholders to sell the assets or consolidate the corporation, and to give the remaining stockholders the choice of approving the action by acquiescing in and accepting the terms of the sale or consolidation, or of dissenting and having the fair cash value of their stock determined and paid to them.

What is the meaning of "the fair cash value"? In theory, at least, it is the share of the proceeds the stockholder would have received if the assets of the corporation

had been sold for cash. Does this procedure alter the contract rights of the stockholders? Not if he is a holder of common stock or preferred stock (in some respect other than distribution of assets), because he receives just what he would have received in the event of the sale, even though the statutes had not been enacted. They only provide an exclusive remedy for ascertaining and enforcing his rights. But if he is a preferred stockholder in distribution, we are forced to the conclusion that the procedure does invade his contract rights, in that it ignores his right of preference and places him in the position of a common stockholder.

We cannot see, therefore, that any contract rights of the plaintiff were altered by the court holding that he had elected to follow the statutory remedy, and that the remedy was exclusive.

As pointed out by Judge Snediker, these are statutes of remedial procedure. Being remedial, their province is to determine and enforce rights and obligations, but not to create or alter them.

It is also noted that they permit the corporation and stockholders to agree upon the fair cash value of the stock, and if they do so, their agreement is final and binding, and the provisions of the statute need not be followed further.

It might be seriously considered whether or not the parties in the case at bar have not done so by the express terms of the subscription contract, the distinction being that whereas, the statute contemplates such an agreement, at the time of the distribution, the parties in the case at bar have made an agreement in contemplation of the event of distribution.

This court is therefore of opinion that the decision in the *Spencer* v. *Beaver-Remmers-Graham Co.* case, as far as the statement of facts discloses, was sound in holding that the plaintiff stockholder had elected to rely upon his statutory remedy, and that such remedy was exclusive of any other. But that decision cannot be construed as holding that stockholders who, by an express contract with the corporation have been given a preference in distribution, can be compelled by action of the corporation to sur-

render it, to be placed in the position of stockholders having no preference, and be compelled to rely upon and pursue the statutory remedy provided for the latter, to the impairment of the obligations of their contract. It must be. assumed that such a procedure would or might violate the terms of the contract, for otherwise, if the terms of the contract must control, to follow the statutory procedure would be useless, and the law does not require a vain thing.

This court cannot, therefore, consider that case as controlling the case at bar.

A situation might easily arise in which the assets of a corporation are sold for a very profitable price and permitting a distribution above par. Could preferred stockholders, situated as the plaintiffs in this case avoid the terms of their contract and follow the statutory remedy in the expectation of having the fair cash value of their stock fixed in excess of the terms of the contract? We think not, and believe common stockholders could successfully contend that the preferred stockholders were attempting to acquire something which belonged to the other stockholders, and that such preferred ones were limited by and bound by the terms of their contract. *Williams et al.* v. *Renshaw et al.*, 220 N. Y. S., 532.

The decision of the Court of Appeals for Hamilton county in the case of *Uihlein* v. *Cincinnati Car Co.*, 34 Ohio App., 52, is also cited by defendant as an authority in this case.

That decision was apparently justified by defective and ambiguous pleading in the petition, the court indicating that it failed to comply with Section 11305 of the General Code requiring a statement of facts constituting a cause of action, in ordinary and concise language. The court then says:

"Only by the intervention of conjecture, is it possible to determine what cause of action is attempted to be stated in this petition."

And again:

"In the first place, the contract is alleged in such terms

as to show that it is operative in the event of liquidation. No liquidation is alleged. It is not claimed that the corporation has been dissolved so as to give effect to the provision of preferred stock to which plaintiff refers."

This court cannot see that the citation is applicable to the case at bar.

Many valuable and pertinent citations have been furnished by counsel in their briefs, but space does not permit an extended discussion of them.

Other interesting contentions have been presented in argument and by briefs. One is the saving clause in the statute (8623-136), *supra.*

However, since this court would have reached the same conclusion it has, even in the absence of such a provision, it is not necessary to discuss that feature in detail.

Another is that the corporate sale and merger statutes divide stockholders into two classes: Those who dissent to the sale and those who do not dissent; that the method of procedure provided in the statutes applies only to the former; that the plaintiffs in this case are not of that class, because they did not object to the sale but only to the proposed action of their own corporation in distributing the proceeds of the sale in violation of the terms of their contract with it. This point also is seriously considered, but discussion and determination of it could not effect the conclusions already reached.

For these reasons this court is of opinion that the plaintiffs cannot be compelled by force of Section 8623-72 of the General Code, to pursue a remedy which would impair the rights or obligations of their stock subscription contract; that to so construe those statutes would be in violation of both the Federal and State Constitutions.

The court does not, however, mean to be understood that it considers these statutes unconstitutional, but on the contrary that they are valid and the exclusive remedy for the purposes for which they were enacted. An elementary rule of construction is that where a statute is capable of two interpretations, one constitutional and the other unconstitutional, the former will be preferred.

The demurrer will therefore be sustained.